## In the Matter of the Distribution of the Estate of Benajah Ticknor.

*Construction of Statutes.* — The application of particular provisions of a statute is not to be extended beyond its general scope and object, unless such extension is manifestly designed. ·

*Statute concerning Religious Societies.* — *Foreign Corporations.* — The statute concerning Religious Societies, etc., ( *Com. L.,* 660,) is confined to the restriction and regulation of religious bodies exercising their functions in this State, and being, therefore, within its legislative control, so far as their temporal affairs are concerned; and does not embrace foreign corporations or associations, except in the exercise of their peculiar functions or corporate franchises within this State.

*Corporate franchises.* — *Bequest to Foreign Religious Corporations.* — The receipt of money under a will, and the institution of legal proceedings to recover it, cannot be regarded as the exercise of such corporate franchises as are forbidden by said statute to any but domestic corporations, and a will bequeathing money to a foreign regliious corporation is valid, though it does not comply with the provisions of said statute.

*Bequests to Unincorporated Associations.* — A bequest of money *generally,* and not upon -*permanent uses,* to an unincorporated association capable of clear identification, is valid.

*Heard .July* 13 *and* 14. *Decided October* 27.

Case made after judgment from Washtenaw Circuit.

This case was an appeal from a decree of distribution of the Probate Court for the County of Washtenaw. The Probate Court held that the Tract Society of the Protestant Episcopal Church in the United States could not take a legacy bequeathed to it, for want of legal capacity — it being unincorporated. The Tract Society appealed from this decree to the Circuit Court, which affirmed the decree of the Probate Court as to the Tract Society, and also held, revising so far the decree of the Probate Court, that the bequests to the Domestic

and Foreign Missionary Society of the Protestant Episco-
pal Church in the United States, the American Bible
Society, the Seaman's Friend Society, and the Society
for the Relief of Widows and Orphans of Deceased
Clergymen of the Protestant Episcopal Church in Bos-
ton, Massachusetts, were void, as not having been made
in accordance with the provisions of *Chapter* 68, *Com-
piled Laws*, concerning religious societies, etc.

The facts, so far as they are necessary to an under-
standing of the legal questions raised in the case, are
stated in the opinion of the Court.

*Sidney D. Miller,* for claimants:

The statute under which the contestants seek to in-
validate the will is the Act No. 145, of the session of
1855, which is incorported with the *Compiled Laws* as
Chapter 68, (*p.* 659, 1 *C. L.*)

A reference to the history of legislation upon the
subject of this statute, will aid us in the examination
of its provisions:

The elements of the present law are found in the
act of July 31, 1830, (*Laws of* 1833, *p.* 544,) entitled
"An act to provide for the incorporation of religious
societies," which was substantially re-enacted by the re-
vised statutes of 1838, (*p.* 223.)

A glance at these statutes will show that the entire
enactments, in all their provisions, have reference solely
to such "churches, congregations and religious societies"
as seek corporate capacity in this State.

But, although these statutes were general, and were
intended to be sufficiently broad to cover the systems of
government of all religious bodies, they were found to
be inappropriate to the Methodist Episcopal Church, as
well as to the Dutch Reformed Church and others, and
accordingly we find these bodies applying to the Legis-
lature for amendments adapted to their necessities. — See
*Laws of* 1839, *p.* 83; 1840, *p.* 16; 1841, *p.* 79.

ESTATE OF BENAJAH TICKNOR.

The amendatory acts then granted had, however, left the general law in such ill-digested form that the Council of Revision, provided for by law, attempted to harmonize the legislation by adding to the statute of 1838 the last two sections of Chapter 52 of the Revised Statutes of 1846, (*p.* 208.)

These sections establish the rule that whenever, under the peculiar systems or usages of any religious body, the governing power was constituted in a manner different from a congregational election, whether it were by the designation of any single officer, or by their own self-appointment, such governing power was to be, at their option, a corporation with all the rights and powers of other religious corporations under the provisions of the chapter.

We contend that the law was never intended to apply to organizations legally existing in sister States, which do not seek to exercise any corporate functions within this State:

1st. Because such a construction is in accordance with the history of legislation upon the subject.

2d. Because it harmonizes with the general course of legislation. Since the adoption of the constitutional provisions requiring the formation of corporations under general laws, twenty such statutes have been enacted, authorizing the incorporation of a great variety of associations; these statutes constitute one general title of the law; they all relate to organizations within this State; many of them contain provisions more or less broad in their language, susceptible of application to bodies not organized under them.—See *Chaps.* 65 *and* 67.

3d. Because it is consonant with the spirit of comity between the States.

4th. Because by any other construction this statute must be regarded as introducing provisions of law inconsistent with Chapters 92, 93 and 144, and disturbing the general legislation therein contained.

5th. Because it is a disabling statute, and should be construed strictly.

6th. Because any other construction would render the provisions in question unconstitutional.

7th. Because the provisions of the act would be inconsistent with themselves. Compare Section 22 with 24 ; the right to any existence is denied, while the power to take and hold property is granted.

As to construction of the act, see the following : *Smith on Stat. Con.*, p. 620, etc.; *Bacon's Abr. Stat. I.*; *Broom's Legal Maxims*, 246, etc.; *Dwarris on Stat.*, p. 514, 532, etc.; *Bartlett v. King*, 12 *Mass.*, 555 ; *Fort v. Burch*, 6 *Barb.*, 60 ; *Donaldson v. Wood*, 22 *Wend.*, 395..

It was determined by the Probate Court, upon the hearing for distribution, that the Protestant Episcopal Tract Society could not take the legacy to them, because they were not a corporate body at the time of the death of the testator, and of the probate of the will. They became incorporated April 29, 1863.

The association was organized in 1810, and its existence has been regularly maintained ever since, and no question is raised as to the identity of claimants.

If the directions of a testator are clear and unequivocal with respect to the disposition of his property, and if the objects of his bounty are such as should be encouraged by the law, why should it be permitted that such a technical objection should be interposed to defeat his purpose, and to avoid the cardinal rule in the construction of all wills, that the intention of the testator is to be sought after, and carried into effect ?

A bequest to a public officer, in his official capacity, and to his successors in office, has been held valid, though he is not otherwise named. — *Inglis v. Trustees of Sailor's Snug Harbor*, 3 *Peters*, 99 ; *Beatty v. Kurtz*, 2 *Peters*, 566.

*T. M. Cooley,* for residuary legatee:

It does not seem to us to be necessary to discuss the point raised by counsel, that the statute is confined in its operation to *domestic* corporations. The words of the statute do not give it that restricted effect, and its purpose would be defeated if such a construction could be placed upon it.

Section 2030 of the Compiled Laws provides that "no corporation, for religious, ecclesiastical, educational or charitable purposes, shall be recognized as existing by the common law, the canon law, or by prescription, or in any other manner, *except by express statute of the State.*"

To give this section a literal construction may be thought illiberal, and wanting in that comity between States which ought to pervade our system; but it would be in entire harmony with what has sometimes been regarded as sound State policy, and very much more in accordance with good sense and with the evident purpose of this law, than a construction which should forbid corporations within the State to take, and allow the wealth of the State to be donated to foreign corporations over which the State has no control.

The Protestant Episcopal Tract Society was not a corporation when this will took effect. It had, at that time, no legal authority to take and hold property. Having none then, its incorporation since cannot relate back so as to save to it the legacy. If there was no capacity to take when the will took effect, the amount designed to be given vested immediately in the opposing claimants, and their rights, thus become vested, cannot be divested by any subsequent action to which they were not parties.

Whether a Court of Equity could sustain such a gift to an unincorporated society is a question not arising here.

*A. Felch* for heirs at law:

We first consider the claims of *the four incorporated companies.*

We deny their right to take the bequests; because,

1st. They are all. within the prohibitory clauses of §2032 and §2033, Compiled Laws.

That the legacies and legatees are within those provisions is manifest from the terms of the charters and by-laws of these companies.

2. The documentary proof filed in the case shows that these four Societies are foreign corporations. Such corporations are, by statute, prohibited a standing in our Courts. Section 2030, 1 Compiled Laws, 665, provides that "no corporation for religious, ecclesiastical, educational, or charitable purposes shall be recognized as existing by the common law, the canon law, or by prescription, or in any other manner, except by express statute of this State." All the corporations named in the will come clearly within the description as to the purpose of their organizations, specified in that clause of the statute; and this Court cannot, therefore, recognize them as corporators, or treat them as bodies having the right to be heard in our Court, or to take or hold property of any kind. Corporations organized under the laws of one State can exercise no powers within the jurisdiction of another except by permission of the sovereignty of the latter, and under the statute above quoted the sovereignty of Michigan denies all rights or recognition of rights to such as are organized for religious, ecclesiastical, educational, or charitable purposes, unless they derive their powers by express statute of this State. Foreign corporations, of the character indicated, are placed under inevitable prohibition. The object of the statute is manifestly to confine the benevolent charities of our people, in furtherance of these great objects, to our own

people and their home institutions, rather than to send them abroad to enrich foreign overgrown corporations.

These four claimants then cannot be recognized in our Courts, and can take nothing within our jurisdiction by will or otherwise.

Secondly. As to "The Protestant Episcopal Tract Society," we deny its right to the bequest in question; because,

1st. In this case it is to be regarded simply as an unincorporated association.

The act of incorporation given in evidence shows that it was incorporated since this litigation arose, and, indeed, since the case came to the Circuit Court by appeal.

Such subsequent act of incorporation does not aid the claimant. For the purposes of this hearing it is as it was at the commencement, still unincorporated. *Owen v. The Missionary Society*, 14 *N. Y.*, 384; *Baptist Association v. Hart*, 4 *Wheaton*, 1; *Baptist Association v. Smith*, 3 *Pet.*, 48 *app.*; *Trustees Sailors' Snug Harbor*, *etc.*, 3 *Pet.*, 99.

2. As an unincorporated association, can the "Tract Society" take this bequest.

(a.) This also is a foreign organization, and the same reason which the statute (§2030) applies to corporations would seem applicable here. It is not, however, within the letter of the provision last referred to.

After all the conflict of authorities on this subject in the various phases in which it has been presented, it is believed that the rule is now settled by the best authorities, that a gift or bequest to an unincorporated association, in its assumed name, is not good, and cannot be enforced either at law or in equity. Where such a competent person is named in the will, Chancery may aid in executing any legitimate trust connected with the donation, but where an unincorporated association alone is named as devisee or legatee, the gift fails and the heir

or next of kin takes the property. *Downing v. Marshall,* 23 *New York Reports*, 366; *Williams v. Williams*, 4 *Selden*, 525; *Owens v. The Missionary Society, etc.*, 14 *New York*, 380; *Beekman v. Bonsor*, 23 *New York*, 298; *see also the able argument of William C. Noyes, in the last mentioned case, in Appendix to 23 New York Reports, and the authorities therein cited by him.*

Numerous other cases might be cited to the same effect, but these, with the references therein made, seem sufficient to establish the point.

CAMPBELL J.:

Benajah Ticknor made his will, providing for the investment of certain moneys, in which his widow was to have a life interest. Upon her death, that fund was bequeathed, in equal shares, to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States, the American Bible Society, the Seaman's Friend Society, the Society for the Relief of Widows and Orphans of Deceased Clergymen of the Protestant Episcopal Church in Boston, Massachusetts, and the Tract Society of the Protestant Episcopal Church in the United States. The first four Societies are incorporated under the laws of New York and Massachusetts. The Tract Society is a New York Society, not incorporated until quite recently, and since the application to the Probate Court. The executors having applied to the Probate Court of Washtenaw County, (where the will was admitted to Probate,) showing the decease of the widow, and asking for an order of distribution, these legacies are contested by the next of kin, as rendered invalid by the statute of 1855, entitled "An Act concerning Churches and Religious Societies, establishing uniform rules for the acquisition, tenure, control and disposition of property conveyed or dedicated for religious purposes, and to repeal Chapter 52 of the Revised Statutes." — 1 *C. L.*, 660. The clauses

supposed to be violated are the latter part of Section 22, and Sections 24 and 25. It is provided in Section 22 that "no corporation for religious, ecclesiastical, educational or charitable purposes shall be recognized as existing by the common law, the canon law, or by prescription, or in any other manner, except by express statute of this State." Sections 24 and 25 require certain formalities and conditions to be complied with before a devise or bequest to religious Orders or Societies, or to be controlled by them, can be maintained.

In order to determine whether this statute reaches the case before us, we must look beyond isolated phrases to the general tenor and design of the act itself. It has always been a rule of construction, (and our constitutional provision requiring the purposes of a statute to be indicated by its title, is but an extension of this rule,) that the application of particular provisions is not to be extended beyond the general scope of a statute, unless such extension is manifestly designed. Legislatures, like Courts, must be considered as using expressions concerning the thing they have in hand; and it would not be a fair method of interpretation to apply their words to subjects not within their consideration, and which, if thought of, would have been more particularly and carefully disposed of. We think this statute, when compared with the state of things before existing, has a plain and consistent meaning, which will not allow us to regard it as embracing foreign associations, unless they undertake to exercise their peculiar functions within our territory, as they might do if lawfully incorporated here.

The general purpose of the statute is to revise the previous legislation concerning the incorporation of religious societies; to require them to become organized in such a way as to have suitable trustees representing the Society, and more especially to cut off all pretence of corporate capacity derived from any authority or system

of laws not known to our Courts, and not subject to our own supervision, so far as all the temporal posses- sions of the church should be concerned. Having provided that all religious bodies assuming corporate existence, and the control of property, must be organized in such a way as is deemed safe and expedient under our statutes, the law then proceeds, in the same spirit, to prevent their obtaining gifts from private bounty, by any means which would prevent the calm and deliberate action of the donor, when in the full and uncontrolled dominion of his will and mental faculties. It is impossible to read the statute together, without seeing its object to be the restriction and regulation of religious bodies exercising their functions here, and being therefore entirely within our legislative control, so far as their temporal rights are concerned.

Section 22 is chiefly devoted to an entire prohibition of the exercise of corporate functions by persons not in- corporated by our laws; and it is hardly necessary to suggest that we cannot impute to the Legislature a de- sign of reaching matters abroad and beyond our juris- diction, or of denying to corporations of other States, rights which they have derived under lawful authority there. Section 23 prohibits the recognition of the canon or other ecclesiastical law, as a rule for the acquisition and government of property;—again clearly relating to its operation in this State, because we have nothing to do with acquisitions abroad. To hold that, after a series of sections consistently framed for the regulation of reli- gious corporations here, the sections regulating particularly the form and validity of donations for the benefit of such bodies were designed to reach a further class not in the remotest way referred to before, would be to introduce an element of incongruity, and to impute a degree of care- lessness which the elaborate care previously evinced shows could not have existed. It is undoubtedly true that some-

of the evils aimed at by this statute may be accomplished by the importunities of entirely foreign corporations. But such instances cannot be very frequent, and their remedy would be more appropriately introduced elsewhere; and language should be very clear, indeed, to justify us in finding it in the statute before us.

The receipt of money under a will, and the institution of legal proceedings to recover it, cannot be regarded as the exercise of corporate franchises, such as are forbidden by the statute to any but domestic corporations. The law refers to such acts as a corporation is organized to perform, and not incidental proceedings, having no necessary bearing upon its peculiar corporate operations.

We think the foreign corporations mentioned in the will are entitled to receive the bequests made in their favor.

The bequest to the Tract Society is resisted on the further ground that an unincorporated association has no legal capacity to take. We do not feel called upon, in this case, to examine into the vexed question of the extent of the judicial power of equity over charities. This will does not set apart property for any permanent purpose, nor does it purport to create any trust. It bequeaths certain money to an association without restriction concerning its use, and, of course, the money must be considered as devoted to its general uses. The articles of the society do not require money to be funded, but leave its application to be made at any time. The extraordinary powers of chancery have seldom, if ever, been applied, except to regulate permanent trusts requiring corporate, or *quasi* corporate, succession, to expend the income of a fund designed to be perpetual. And the only question before us is whether the legatees are so clearly designated, that the executors can find them, and pay the money into the proper hands, so as to be exonerated.

ESTATE OF BENAJAH TICKNOR.

It has been settled that a *devise* of land cannot be made to an unincorporated society by name. Mr. *Kyd*, referring to Lord *Coke*, says that this rule did not always exist, and that the reasons for its adoption are not easily ascertained, and remarks: "*Perhaps we must be satisfied with stating the rule as it is, without attempting to account for its origin.*"—1 *Kyd on Corp.*, 5, 6, 7. It is equally well settled, and for obvious reasons, that where an association is required to manage a permanent trust, it can only do so by corporate succession; for an unincorporated body has no means of keeping up its existence, except by the consent and continuous agreement of new parties, and it is at all times liable, therefore, to become dissolved.

But there is very little authority for the claim that an unincorporated body of persons may not take an unconditional bequest of personalty, not charged with any permanent trust. It is said, indeed, in *Owens v. the Missionary Society of the M. E. Church*, 14 *N. Y.*, 380, that "nothing is better settled than that a devise or bequest to an unincorporated association is, in general, void as well in equity as at law;" and upon this remark, without further reasoning, it was held in that case that, without the interposition of some charitable use, which might give a ground for the peculiar interposition of the chancery jurisdiction over charities, a bequest to such a society was void. But the authorities referred to as sustaining this *dictum* all related to *devises*, or permanent trusts. Nor have we been able to discover any authority giving color to such a sweeping assertion. On the contrary, the law recognizes the acts and contracts of unincorporated associations as among the commonest things coming before the Courts, whether with or without trustees and officers. Partnerships and unincorporated joint stock companies do a large proportion of the business of every community. They take

and transfer personal property by their associate name, and no one has ever doubted their capacity to take by bequest that which they may take by contract. — *De Mazar v. Pijbus*, 4 *Ves.*, 644; *Stubbs v. Sargon*, 2 *Keen*, 255; 3 *M. & Cr.*, 507. Where bequests are made to unincorporated charitable associations generally, and not for permanent purposes, the English Courts have always upheld the bequests. They have not been sustained on the ground that they came within the extraordinary charitable jurisdiction. On the contrary, it has been held that, when made for the general purposes of the society, the public have no concern with the legacies, and the Attorney General is not a proper party, the money being at the entire and uncontrolled disposal of the association. Whereas if the bequests are made upon permanent uses, the society cannot take the money, and the Attorney General must be before the Court, and a scheme must be prepared placing the trust in other hands. — *Wellbeloved v. Jones*, 1 *S. & S.*, 40; *Wilson v. Squire*, 1 *Y. & C.*, 654; *Waller v. Childs, Ambler*, 524; 1 *Jarman on Wills*, 218. In other words, a bequest of money generally, to an ascertainable unincorporated society, is placed on the same footing, so far as regards its right to take to its own use, as if it were incorporated. Similar bequests have been maintained where there has been no association whatever, but where the will pointed out the means of identification. Thus a bequest "to the inhabitants of Tawleaven Row, in the parish of Sethney," was held sufficiently certain, and when their names were ascertained the money was ordered to be paid to them. — *Rogers v. Thomas*, 2 *Keen*, 8. The Inns of Court in England are mentioned by Mr. *Kyd* as remarkably ancient unincorporated associations, which have retained their real estate by an ingenious succession of joint tenancies. — 1 *Kyd on Corp.*, 6, 7. It is well known that their valuable libraries and pictures

are, to a considerable extent, derived from bequests. The extent of their influence, and the fact of its legal recognition by the English Courts, are familiar to all. And if an incorporation were deemed at all necessary for the preservation of their valuable personal property, no one can doubt but that it would have been obtained long ago. That these bodies are not corporations is recognized fully by the authorities. — See *Sharswood's note to 1 Bl.*, 25 ; *Tomlyn's Law Dict., "Inns of Court."*

The great body of American decisions fully sustain the validity of bequests to unincorporated societies. It is true several cases refer to them as charities; but it is not pretended that any American Court of Chancery can create a scheme which shall give corporate succession, and if these bodies can take at all, it can only be because there is no inherent incapacity. The cases were fully cited on the argument, and it is not necessary to refer to them here. We have found no satisfactory authority which shows why an association, capable of clear identification, is not as capable of receiving a simple pecuniary bequest for lawful purposes, as a partnership of purchasing a stock of goods.

The incorporation of the Tract Society, since this controversy was begun, renders it unnecessary to inquire into the names of the various officers. The bequest must be paid over to the corporation. The judgment of the Circuit Court is reversed, with costs, and an order must be entered requiring a distribution among all the legatees named, and that directions be sent to the Probate Court accordingly.

The other Justices concurred.