### BENNETT v. MICHIGAN PULPWOOD CO.

DAMAGES—STATUTES—TRESPASS—LOGS AND LOGGING—CONVERSION OF TIMBER—TREBLE DAMAGES.

> Where the owner of a raft of cedar posts and poles which went ashore in 1908 in Canada, brought suit against the defendant for converting his timber, with which the defendant's property became intermixed, going ashore at the same point, three years later, and the evidence of the defendant showed that the timber could not be assorted on the exposed shore and that it was necessary to collect all the logs and tow them to a Michigan port, and that defendant, as soon as plaintiff made claim for the value of the timber, offered to return it, and did not claim to own the cedar, the plaintiff was not entitled to treble damages under 2 Comp. Laws, § 5094 (2 How. Stat. [2d Ed.] § 4156), since the statute relates to an unlawful taking.

Error to Chippewa; Hudson, J. Submitted April 21, 1914. (Docket No. 97.) Decided June 1, 1914.

Case by James T. Bennett against the Michigan Pulpwood Company for certain poles and timber. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

181 Mich.—3.

*Sherman T. Handy* and *Francis T. McDonald,* for appellant.

*E. S. B. Sutton,* for appellee.

MOORE, J. The following correspondence passed between the parties to this litigation:

"October 21, 1911.

"MICHIGAN PULPWOOD CO.,
      "Adams Building,
         "Sault Ste. Marie, Mich.

*"Gentlemen:*

"Referring to our conversation of yesterday relative to the cedar tie cuts and poles belonging to James T. Bennett, a part of which are now claimed by Mr. Bennett, to be in your possession, I hereby make demand, for and on behalf of Mr. Bennett, on you, for pay for timber as follows:

| | |
|---|---:|
| 1,000 cedar posts at $2.50 each.. | $2,500 00 |
| Cedar logs which would cut 14,000 ties at 40c each........ | 5,600 00 |
| | $8,100 00 |

"Under sec. 5094 of the Compiled Laws, Mr. Bennett would be entitled to three times this amount, or $24,300.00. Mr. Bennett, therefore, demands payment of the said sum of $24,300.00.

           "Yours truly,
    [Signed]   "SHERMAN T. HANDY."

"October 25, 1911.

"MR. J. T. BENNETT,
      "De Tour.

*"Dear Sir:*

"The letter written in your interest by Mr. Handy has been handed to me for answer, and I find on investigation that the timber you refer to is certain timber we understand that was stranded and abandoned by you on the Canadian shore in Lake Superior some time ago.

"You have been notified that this timber is at the American Soo, and you have been up to it and looked it over, and we await you taking the timber if it is yours, as the season is getting late, and we want our boom free.

"You have been informed how our boom broke when it was holding our timber on the Canadian shore, and our timber was stranded in part at the place where this timber you claim was stranded some time before, and the sea in casting it up intermingled it, that it was necessary to take all of the timber off the beach to get ours, and, there being no facility to sort it in that exposed place, we were compelled to bring the whole of it to the American Soo. By so doing, we have materially benefited you.

"The timber of yours, if it is yours, we want you to take, and you are notified to get it, and we will assist in sorting it.

"We have never claimed this timber as our own; but, under the Canadian laws where it was salved, we are entitled to compensation for salving it, as it has been so stranded and abandoned by you for over one year. The question of our compensation will be adjusted as soon as you get it sorted out and take it over.

"We desire you to act promptly in taking your timber, as we want to use our booms.

"Yours truly,
[Signed]   "E. S. B. SUTTON,
"Vice President,
"Michigan Pulp Wood Co."

"October 26, 1911.
"MR. E. S. B. SUTTON,
"Vice Pres. Michigan Pulp Wood Co.,
"Price-Harrison Bld.,
"City.

"*Dear Sir:*

"Your favor of the 25th instant addressed to Mr. James T. Bennett in answer to mine of recent date has been handed me for reply. In answer would say that the timber in question was stranded on Canadian shore, but was never abandoned by Mr. Bennett. We know the amount of timber belonging to Mr. Bennett which you took, and what we want is pay for what we are entitled to under the law. The timber was converted into your possession without our consent or knowledge, and we are looking to you for the pay, rather than the timber.

"Unless we hear from you or a settlement is made within a few days, we will be obliged to take legal proceedings against you.

"Yours truly,
[Signed]  "Sherman T. Handy,
"Atty. for J. T. Bennett."

"November 10, 1911.

"Mr. E. S. B. Sutton,
"Vice President Mich. Pulp Wood Co.,
"City.

"*Dear Sir:*

"*Re Bennett* v. *Michigan Pulp Wood Co.*, on October 26th last I wrote you in answer to your favor of the 25th, stating that we wanted the pay for our timber, and not the timber, as it was taken into your possession and is still retained by you. I was in hopes that litigation might be avoided; but, as you have not answered my letter, I take it you do not propose to make settlement and will be obliged to take legal steps to collect the same.

"Yours truly,
[Signed]  "Sherman T. Handy."

"November 10, 1911.

"S. T. Handy, Esq.,
"City.

"*Dear Sir:*

"I have yours of today and in reply will say that the timber referred to in our possession is, as you have been advised, held by us subject to your order, and we have asked you to take it, that is, your client, and he has not done so, and, as its possession is a source of expense to us, we will look to your client for compensation since our notification to him to take the same.

"Any litigation you see fit to engage in has no terrors for us as we have defined our position in the matter, and, if you do not take for your client the timber, or if he does not take it, it is held subject to his risk as it has been held since we so notified him. We obtained possession legally in Canada, and have been and still are anxious to deliver the same to your client.

"Yours truly,
[Signed]  "E. S. B. Sutton,
"Vice President."

This suit was begun by declaration January 3, 1912. The case was put at issue and tried before a jury. The judge directed a verdict in favor of the defendant. The case is brought here by writ of error.

The declaration has but one count, which count states a case under section 5094, 2 Comp. Laws (2 How. Stat. [2d Ed.] § 4156). The pivotal question is whether section 5094, 2 Comp. Laws, applies to the instant case. The facts are not very much in dispute. The plaintiff testified in substance that he was lumbering in Canada, and that, when he was making up a raft of cedar poles bearing his mark, in September, 1907, the timber got away. On the cross-examination he said:

"The raft broke, and the timber went up the lake. There was a southwest wind. I cannot tell exactly where it landed. I did not go to see. I was up there during the year that this raft was being made up. I was there the day it broke. * * * I cannot tell just where the timber went; but it was headed for shore, north of Mamainse. I did not go to see where this timber went; but I had some fishermen there look it up for me and made arrangements with different people at different times to go and pick it up, but I wasn't in financial shape myself the next few years after that to do it myself. I never went up there myself since the timber got away or sent any one in there; but I have made an effort to get it by making arrangements with others to pick it up. I do not know how much of it is left on the Canadian shore. A man was up there this summer and said there was not enough left to pay to pick it up. He said he went to Lizzard Island and Montreal, and around the Agawa shore. I think the Michigan Pulpwood Company lumbered 15 or 20 miles north of us in 1910 and 1911. I never lost any timber by rafts breaking before. I never had any experience in picking up timber that was mixed with others. I cannot give any idea of how much timber the Michigan Pulpwood Company got belonging to me; I only saw what was at Algonquin, and did not count that."

The record discloses that defendant was lumbering in the vicinity of where plaintiff had lumbered in Canada, and in 1911 had a raft go to pieces and go ashore, the pieces becoming mixed with the cedar poles that belonged to plaintiff which had gone ashore in 1908, and that, to recover defendant's timber, it was necessary to cause the shore to be cleaned, and, as the assorting could not be done on that exposed shore, a large raft containing timber entirely belonging to defendant and a smaller one in which was the timber plaintiff claims intermixed with defendant's timber were started for Sault Ste. Marie; the tug Thompson towing them. When the tow reached a point just below Round Island in the St. Mary's river, a steamer ran into the rear raft and broke it up, and the wind blew some of the timber ashore on the American side. It was picked up as soon as could be done and put in a boom and tied in Michigan waters; but it got away during the night and went ashore again. It was at once picked up under instructions of the Michigan Pulpwood Company by the tug C. D. Thompson, and was brought to Kelly & Mayer's dock on the American shore of the St. Mary's river in the city of Sault Ste. Marie.

Plaintiff offered testimony tending to show that an officer of defendant company was informed that the mark on the timber was his mark, and that an attempt had been made to sell this timber. It does not appear whether this was before or after the correspondence; but it does appear that the bulk of the timber at the time of the trial had been taken out of the water, and was still on shore.

The attitude of the parties before litigation was begun in relation to the logs is shown by the correspondence which we have quoted. The defendant introduced in evidence the Canadian statute applying to lumbering operations, which reads in part as follows:

"In case of neglect of any person to make adequate provisions and put on a fair proportion of the men required to break jams of intermixed logs and to clear the same from the banks and shores with reasonable dispatch, etc., it shall be lawful for any other person whose logs are intermixed to put sufficient number of men on to supply the deficiency and clear such intermixed logs from the banks and shores of such water."

Section 8 (1) gives the person supplying such deficiency and causing such intermixed logs to be cleared, a lien upon the logs of the person guilty of such neglect for a fair proportion of the charges and expenses incurred.

It is the claim of defendant that the law of Canada applies to this transaction, and that its taking possession of the logs was not only lawful but was necessary if it would avoid the loss of its own timber, and that it has never sought to deprive plaintiff of its timber. It is the claim of the plaintiff that defendant cannot invoke the law of Canada, unless it invokes all of it. We quote from the brief:

"There certainly is no evidence of a disposition on defendant's part to give plaintiff the notice required by the statute upon which defendant justifies its action. Who can say that notice was given without delay or within a reasonable time?"

It is also his claim that, when the smaller raft broke in the St. Mary's river, and some of the logs went ashore and were recovered by defendant, the provisions of section 5094, 2 Comp. Laws (2 How. Stat. [2d Ed.] § 4156), at once applied. Stated concisely the situation seems to be as follows: In 1907 plaintiff had a raft which was broken up, and the timber went ashore. Plaintiff took no effective steps to recover this timber. In 1911 defendant had a raft which broke and went ashore, its timber intermingling with the timber of plaintiff, which went ashore four years before, so that, in order to recover its timber, it was necessary for defendants to take possession of it all,

which it did, and conveyed it all to Sault Ste. Marie. Shortly after this, and while the timber was still in the possession of the defendant, a claim for damages was made by plaintiff. He was at once informed that the defendant had never claimed to own the timber.

"The timber of yours, if it is yours, we want you to take, and you are notified to get it, and we will assist in sorting it."

The plaintiff, instead of taking the timber as requested, brought this suit and seeks to recover three times its value, without offering to make any deduction for the expenses incurred by defendant.

There is a full discussion in the briefs of whether the law of Canada applies, and of other legal propositions, which we think it unnecessary to discuss.

It is a familiar principle of law that, in construing a statute, we must consider the occasion of its enactment and the purpose to be accomplished. *Washburn* v. *People,* 10 Mich. 372; *Ticknor's Estate,* 13 Mich. 44; *Caldwell* v. *Ward,* 83 Mich. 13 (46 N. W. 1024).

When section 5094, 2 Comp. Laws (2 How. Stat. [2d Ed.] § 4156), is carefully read in connection with the other provisions of the act, it is clear that the purpose of its enactment was to prevent the unlawful taking of timber by one person or corporation belonging to another. To apply its provisions to the instant case would be a travesty upon justice.

Judgment is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OS-TRANDER, BIRD, and STEERE, JJ., concurred.