SMITH *v.* UNION GUARDIAN TRUST CO.

1. MORTGAGES—BONDHOLDERS—IMPAIRMENT OF CONTRACTS.
   Rights of persons holding bonds secured by trust mortgages are contractual and are protected by both Federal and State Constitutions (U. S. Const., art. 1, § 10; Mich. Const. 1908, art. 2, § 9).

2. Statutes — Construction — Occasion of Enactment — Vested
   and Future Contract Rights—Constitutional Law.

   While in construing a statute, the court must consider the occasion of its enactment and the purpose to be accomplished, yet there may not be read into it provisions which affect both vested and future interests of holders of contract rights unless the intent so to do be fairly expressed therein.

3. Mortgages—Trusts—Interest on Bonds—Cancellation—Statutes.

   Statute enacted "to provide ways and means to conserve the value" of bonds secured by trust mortgages and containing authority to extend time for payment of principal or interest or both or "to modify or change the manner, time or amount of sinking fund payments, or other payments," *held*, not to authorize inclusion of terms in supplemental agreement to trust mortgage cancelling some accrued and future interest and reducing rate payable on bonds secured by mortgage where all bondholders did not agree thereto, hence trustee was warranted in declining to execute such agreement (Acts Nos. 89 and 114, Pub. Acts 1933).

Appeal from St. Clair; Robertson (William), J. Submitted January 9, 1935. (Docket No. 36, Calendar No. 38,112.) Decided April 8, 1935.

Bill for declaration of rights by Herbert W. Smith against Union Guardian Trust Company, trustee, a Michigan corporation, Cecil C. Peck and others as members of a Bondholders' Protective Committee, and Otto Andres, John Miller and Phoebe C. Munnecke for construction of Act No. 114, Pub. Acts 1933, and other relief. Patrick H. O'Brien, Attorney General, intervened as party plaintiff on behalf of the Michigan Public Trust Commission and the State Bondholders' Committee. From decree rendered, intervening plaintiff appeals and defendant Union Guardian Trust Company cross-appeals. Bill dismissed.

*Patrick H. O'Brien,* Attorney General, and *Francis K. Young,* Assistant Attorney General, for intervener.

*Shaeffer & Dahling,* for defendant Union Guardian Trust Company.

*Bulkley, Ledyard, Dickinson & Wright,* for defendant Bondholders' Protective Committee.

NELSON SHARPE, J.    The plaintiff, Herbert W. Smith, of Port Huron, on December 1, 1926, executed a series of first mortgage six and one-half per cent. serial gold bonds, totaling $75,000, and to secure the payment thereof he executed a trust mortgage on December 20, but as of December 1, 1926, on certain real estate to the Union Trust Company, now Union Guardian Trust Company.    The bonds were payable in part on December 1, 1928, and every six months thereafter, except that the final payment of $33,000 was to be made on December 1, 1936.    After certification by the trustee, they were sold to the general public.    Payments were made of those maturing on December 1, 1930, and prior thereto, amounting to $9,000.    All interest coupons due prior to September 1, 1931, were paid.

On September 15, 1931, a bondholders' protective committee was formed, of which the defendants Peck, McCallum and Langan are members, under an agreement entered into by all of the bondholders except the defendants Andres, Miller and Munnecke, who each own a $1,000 bond, and bonds in the amount of $3,100, the owners of which could not be ascertained.

Being unable to secure the deposit of all of the bonds, the protective committee sought relief under

the provisions of Act No. 114, Pub. Acts 1933. A supplemental indenture was prepared, to be executed by the mortgagor and the trustee, which, after reciting the execution of the trust mortgage and the real estate described therein, and that $66,000 of the bond issue was yet outstanding, and that upwards of 51 per cent. of the holders of the bonds, who owned more than four-fifths of those outstanding, had agreed in writing to the execution thereof, provided:

1. That the maturity of all outstanding bonds be fixed at December 1, 1946.

2. That the interest rate be reduced from six and one-half per cent. to four per cent. per annum.

3. That all interest due from and including September 1, 1931, and including December 1, 1933, be canceled.

This proposed agreement was submitted to the public trust commission, as required by Act No. 89, Pub. Acts 1933, and approved and accepted by it on August 16, 1933. It was then presented to the trustee, and it declined to execute it for the reason that all of the bondholders had not deposited their bonds with the committee and that, unless the provisions of said Act No. 114 were broad enough in their scope to authorize the amendment to the trust mortgage as proposed, it was without the authority or power to do so.

These facts were set up in the bill of complaint, and a declaration of rights, construing said Act No. 114 and declaring that the proposed agreement is within its terms and, when executed, will be binding upon all of the holders of said bonds who do not present their claims to the court in the manner provided for therein, was prayed for.

On petition of the attorney general, he was permitted to intervene as a party plaintiff. After the submission of proofs, the trial court found that Act No. 114 was constitutional and valid, but that the provisions in the supplemental agreement were not within the purview and scope of the act. A decree was entered in conformity therewith, from which this appeal has been taken.

The first section of the act referred to the acute financial and economic condition which had arisen in the State, thus creating a public emergency, and stated that in order to protect the public welfare, peace, health and safety, and to conserve, safeguard and protect the depositors in banks and the holders of securities in the nature of trust mortgage bonds, it was declared necessary to provide ways and means to conserve the value of such bonds, and for that purpose the police power of the State was invoked.

The second section defines the terms "trust mortgage," "trust indenture," "trustee," and "bonds" secured by a trust mortgage. The third and fourth sections are set forth in full in the margin.* The

---

\* Act No. 114, Pub. Acts 1933.

Sec. 3. Whenever fifty-one per cent. of all holders and the holders of more than four-fifths in amount of all bonds secured by a trust indenture, deed of trust or trust mortgage upon real estate, or leaseholds, or upon real estate and other property, situated in this State, shall hereafter agree with the grantor or mortgagor named in such deed of trust or trust mortgage, by instrument, or instruments, in writing, to extend the time for the payment of the principal of such bonds, or the interest thereon, or both principal and interest, or to modify or change the manner, time or amount of sinking fund payments, *or other payments*, provided for in such deed of trust or trust mortgage or bonds, the provisions of such agreement shall become binding upon the holders of all the outstanding bonds secured by such deed of trust or trust mortgage upon approval thereof, as provided in this act, by the trustee named in such deed of trust or trust mortgage: *Provided*, That at least ten days before such agreement is presented to such trustee for approval, a copy thereof, together with a notice of the time when and place where such agreement will be presented to such trustee for approval, shall be sent by registered mail, with postage fully prepaid, by such grantor or mort-

attorney general urges that the words ''or other payments'' in. the third section, which we have caused to be italicized, should be construed as referring to the rate of interest provided for in the trust mortgage. We cannot place such a construction upon them.

In *Detroit Trust Co.* v. *Stormfeltz-Loveley Co.*, 257 Mich. 655 (88 A. L. R. 1263), handed down on April 4, 1932, more than 14 months before this statute was enacted, this court in an exhaustive opinion,

---

gagor, to each of the holders of such bonds as shall not have assented to such agreement, and as shall be known to said grantor or mortgagor, at the last known postoffice address of such holder, if such grantor or mortgagor has knowledge of such last known address, and that a copy of such agreement and notice shall also be published at least once in a newspaper printed and circulating in the county in which the real estate covered by such deed of trust or trust mortgage is situated at least ten days before such agreement is presented to such trustee for approval. If there is no such newspaper in such county such publication may be made in any newspaper in the State circulating in such county. Proof of such mailing and publication shall be made by affidavit which shall be annexed to the amendment to such trust deed or trust mortgage provided for in this act. It shall not be necessary to publish in such copy of said agreement the signatures thereto or the names of the persons, firms or corporations who have signed the same. Such trustee may approve such agreement at any time within fifteen days after the time specified in such notice for the presentment thereof for approval: *Provided,* That at any time during such fifteen day period the holder or holders of such bonds as shall not have assented to such agreement may apply to a court of chancery in the county in which the real estate covered by such deed of trust or trust mortgage is situated and have a determination made of his or their claims therein, and the court in its discretion may make such order or decree in the premises as shall be fair and equitable under all the circumstances of the case: And *provided further,* That the provisions of such agreement shall thereafter apply to all bonds alike, without preference of one over another. Any bondholder who fails to make application as herein provided shall be presumed to assent to the provisions of said agreement.

. SEC. 4. An amendment to such trust deed or trust mortgage. embracing the terms of such agreement shall hereafter be executed by the grantor or mortgagor and the trustee named in the original trust deed, or trust mortgage, or his, its or their successors, which amendment, shall be recorded in the office of the register of deeds of the county where such real estate is situated, in the same manner as mortgages upon real estate may be recorded, and when so recorded the same shall thereafter constitute notice to all persons of the contents of such amendment.

written by Mr. Justice Butzel, discussed the rights
of persons holding bonds secured by trust mort-
gages, and the conclusion was reached that such
rights are contractual and are protected by the pro-
visions of both the Federal and the State Constitu-
tions.* With this opinion presumptively before the
legislature, it seems clear that, if it determined that
it had the power and authority to affect such rights
in the manner disclosed by the supplemental inden-
ture, express language would doubtless have been
used therefor and its intent not left dependent upon
the construction to be placed upon the words "or
other payments."

The purpose of the act is clearly expressed in the
first section thereof. It was deemed necessary "to
provide ways and means to conserve the value of
such bonds." While "it is a familiar principle of
law that, in construing a statute, we must consider
the occasion of its enactment and the purpose to be
accomplished" (*Bennett* v. *Michigan Pulpwood Co.,*
181 Mich. 33, 40), this court may not read into it
provisions which affect both the vested and future
interests of bondholders unless the intent to do so
be fairly expressed therein.

In our opinion the statute did not authorize the
inclusion in the supplemental agreement of the pro-
visions therein relating to interest, and for that rea-
son the action of the trustee in declining to execute
it was warranted. In reaching this conclusion it
must be understood that we are not passing upon, or
deciding, whether the act would be constitutional
if it expressly provided for the modification of the
trust mortgage in the manner disclosed by the sup-
plemental agreement.

---

* U. S. Const. art. 1, § 10; Mich. Const. 1908, art. 2, § 9.—Re-
porter.

Section 6 of the act reads as follows:

"From and after the first day of March, nineteen hundred thirty-five, this act shall cease to be in force: *Provided,* That any action taken under the provisions of this act shall be in force and effect until maturity of various issues."

As further proceedings under it may not be taken in this case, it is unnecessary to discuss or pass upon the constitutionality of the provision requiring dissenting bondholders after notice to "apply to a court of chancery" to have a determination of "their claims therein," as provided for in the third section of the act.

A decree may be here entered dismissing the bill of complaint. No costs will be allowed.

POTTER, C. J., and NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.