Frank HORSEY and Employers Mutual Liability Insurance Company, Plaintiffs,

v.

STONE & WEBSTER ENGINEERING CORPORATION and C. E. Miles, Jr., Defendants.

Civ. A. No. 554.

United States District Court
W. D. Michigan, N. D.

May 16, 1958.

**650**

DeFant & Lynch, Negaunee, Mich.,
Humphrey & Humphrey, Ironwood,
Mich., for plaintiffs.

Wheaton L. Strom, Escanaba, Mich.,
for defendants.

KENT, District Judge.

Plaintiff, Frank Horsey, commenced an action against Stone & Webster Engineering Corporation, for damages for injuries received as a result of the alleged negligence of the defendant, its agents, or employees. A consent judgment was entered in the amount of $20,-000, and by stipulation of counsel there was reserved to this court a decision as to the application of the provisions of the Michigan Statute, being § 17.189 M.S.A., Comp.Laws Supp. 1956, § 413.15, relative to the liability of the respective parties for the attorney fees and expenses of plaintiff's counsel. No issue is raised as to the value of the services or as to the propriety of the expenses. Plaintiff's counsel had expenses in the amount of $440.19, and had an agreement with the plaintiff that the fees of counsel would be 33⅓% of the gross recovery.

It is the theory and claim of the attorneys for the plaintiff that the compensation insurance carrier of plaintiff's employer is liable for a proportionate share of the attorney fees and expenses of the plaintiff under the terms of the statute above referred to. The section of the statute in question provides as follows:

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than a natural person in the same employ or the employer to pay damages in respect thereof, the acceptance of compensation benefits or the taking of proceedings to enforce compensation payments shall not act as an election of remedies, but such injured employee or his dependents or their personal representative may also proceed to enforce the liability of such third party for damages in accordance with the provisions of this section. If the injured employee or his dependents or personal representative does not commence such action within 1 year after the occurrence of the

personal injury, then the employer or its compensation insurance carrier may, within the period of time for the commencement of actions prescribed by statute, enforce the liability of such other person in the name of that person. Not less than 30 days before the commencement of suit by any party under this section, such party shall notify, by registered mail at their last known address, the workmen's compensation commission, the injured employee, or in the event of his death, his known dependents, or personal representative or his known next of kin, his employer and the workmen's compensation insurance carrier. Any party in interest shall have a right to join in said suit.

"Prior to the entry of judgment, either the employer or his insurance carrier or the employee or his personal representative may settle their claims as their interest shall appear and may execute releases therefor.

"Such settlement and release by the employee shall not be a bar to action by the employer or its compensation insurance carrier to proceed against said third party for any interest or claim it might have.

"In the event the injured employee or his dependents or personal representative shall settle their claim for injury or death, or commence proceeding thereon against the third party before the payment of workmen's compensation, such recovery or commencement of proceedings shall not act as an election of remedies and any moneys so recovered shall be applied as herein provided.

"In an action to enforce the liability of third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workmen's compensation insurance carrier for any amounts paid or payable under the workmen's compensation act to date of recovery, and the balance shall forthwith be paid to the employee or his dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits.

"Expenses of recovery shall be the reasonable expenditures, including attorney fees, incurred in effecting such recovery. Attorney fees, unless otherwise agreed upon, shall be divided among the attorneys for the plaintiff as directed by the court. The expenses of recovery above mentioned shall be apportioned by the court between the parties as their interests appear at the time of said recovery.

"Compensation benefits referred to in this section shall in each instance include but not be limited to all expenses incurred under section 4 and 8 of part 2 of this act, being sections 412.4 and 412.8 of the Compiled Laws of 1948."

It is the theory of the Employers Mutual Liability Insurance Company, the compensation carrier for plaintiff's employer which paid compensation benefits to the plaintiff, that the attorney fees and expenses should be deducted from the gross recovery, that the insurer should thereafter be reimbursed in full in the amount of $4,326.59, for benefits paid to and for the plaintiff under the terms of the Workmen's Compensation Law, and that any balance should be payable to the plaintiff. The insurer relies upon Foster v. Buckner, 6 Cir., 203 F.2d 527, but an examination of that decision will make it obvious that the question of apportionment of expenses and attorney fees was not before that court and was not de-

cided by that court. Other cases cited by the parties, Travelers Insurance Company v. Lumber Mutual Casualty Ins. Co., 20 N.J.Super. 265, 89 A.2d 717; Voris v. Gulf-Tide Stevedores, 5 Cir., 211 F.2d 549, certiorari denied 348 U.S. 823, 75 S.Ct. 37, 99 L.Ed. 649; Ocean S. S. Co. of Savannah, v. Lumbermens Mutual Casualty Co., 2 Cir., 125 F.2d 925; Calhoun v. West End Brewing Co., 269 App.Div. 398, 56 N.Y.S.2d 105; In re Estate of Shields, 320 Ill.App. 522, 51 N.E.2d 816, are not applicable since they interpret statutes which are in different language than that used by the Michigan Legislature. This is primarily a matter for the interpretation of the statute of the State of Michigan and for a determination of the intention of the Michigan Legislature.

As was said in Roberts Tobacco Co. v. Michigan Department of Revenue, 322 Mich. 519, 530, 34 N.W.2d 54, 59:

"The question presented relates to the proper interpretation of the clause of Act 122, Public Acts 1941 above quoted. The basic rule covering the matter is to ascertain and give effect to the legislative intent. City of Grand Rapids v. Crocker, 219 Mich, 178, 189 N.W. 221; Boyer-Campbell Co. v. Fry, 271 Mich. 282, 260 N.W. 165, 98 A.L.R. 827; Gardner-White Co. v. State Board of Tax Administration, 296 Mich. 225, 295 N.W. 624. This requires that the clause in question shall be read in connection with other pertinent provisions of the act and that a meaning shall be given thereto consistent with the general purpose sought to be accomplished."

This entire matter of interpretation of statutes to determine the intention of the legislature is covered in 21 Michigan Law and Practice Encyclopedia, Statutes, § 82, p. 82 et seq.:

"The primary and fundamental rule of statutory construction is that it is the duty of the court to ascer-tain the legislative obvious, plain, clear, and manifest purpose and intention, as expressed and discernible in the legislative enactment under consideration, or the legislative journals, considered both as a whole, and with respect to the specific things included in the act which are under consideration. All other rules serve as but guides to assist the courts in determining such intent with a greater degree of certainty.

"The intention of the Legislature, when so ascertained, is absolutely controlling and must be effectuated, notwithstanding a contrary rule of construction. This controlling intention is the legislative intent entertained at the time of the passage of the statute, and not the intent expressed later by a subsequent amendment thereto.

"Where the legislative intent is fairly ascertainable from the declared purpose of a statute the language of the enactment controls. That is, if the language of a statute is unambiguous, no interpretation or construction is necessary and the intent so manifested must be recognized, and its plain meaning is controlling, since the construction of a statute cannot be repugnant to the clear meaning of the words thereof.

"In all other cases, the intention of the Legislature in passing a statute is to be drawn from an examination of the language of the act itself, the subject matter under consideration, and the scope and purpose of the act, under the ordinary rules of construction, and with the help, it has been stated, of all other available aids to ascertaining the legislative intent, bearing in mind that legislative intention not appropriately expressed has no legal existence. A clause being interpreted must be read in connection with other pertinent provisions and a meaning given thereto consistent with the general

purpose sought to be accomplished by the statute.

"While intent must be inferred from the language used, it is not the meaning of the particular words only in the abstract or their strictly grammatical construction alone that is to govern, but they are to be applied to the subject matter and the general scope of the whole enactment, and to be considered with reference to the evil sought to be remedied, and in the light of other statutes in pari materia as well as the principles of the common law. The occasion and reason of the enactment, the mischief, the letter of the act, whether words have been used in their context in a technical sense, the spirit of the act, and whether the statute under consideration is in its nature remedial or penal, are all factors to be considered and from which the intent of the legislature may be gathered.

"Having ascertained that a certain legislative intent extends to all the provisions of a statute, the courts will so construe it as to make such intent effective as to the whole statute, if this can be done without doing violence to the express terms thereof. However, where a general intention is expressed and also a particular intention which is incompatible with the general one, the particular intention must be considered an exception to the general one."

and see also the cases cited in support of the statements in such Encyclopedia. Thus, it is obvious that where the language of a statute makes its meaning obscure, it is the duty of the court to construe it giving it a reasonable and sensible interpretation. But where the language is clear and unambiguous, the court's only duty is to observe and enforce it. Crary v. Marquette Circuit Judge, 197 Mich. 452, 163 N.W. 905, 166 N.W. 954; Boyer-Campbell Co. v. Fry,

271 Mich. 282, 260 N.W. 165, 98 A.L.R. 827.

The object of statutory construction is to ascertain and carry into effect the intention of the Legislature. Smith v. City Commission of City of Grand Rapids, 281 Mich. 235, 274 N.W. 776. Where, however, the language of a statute is of doubtful meaning, the court should try to give it a reasonable construction, looking to the purpose to be subserved thereby. Bennett v. Michigan Pulpwood Co., 181 Mich. 33, 147 N.W. 490. Ordinarily, if a statute is open to construction at all, if possible it will be so construed as to prevent injustice. Attorney General ex rel. Common Council of City of Detroit v. Marx, 203 Mich. 331, 168 N.W. 1005. The whole Act is to be construed together, and every part thereof should be given effect if possible. Smith v. City Commision of City of Grand Rapids, supra.

The first question presented to the court is whether there is any ambiguity in the statute in question. The first four paragraphs abrogate the former Michigan Rule relating to election of remedies as between rights against an employer and rights against a third-party tort-feasor and define the rights of the parties in regard to litigation and settlement of claims against third parties. The fifth paragraph and the sixth paragraph include provisions as to the disposition of any recovery from a third-party tort-feasor, and as set forth above provide in part as follows:

"\* \* \* Any recovery against the third party for damages resulting from personal injuries or death only, *after deducting expenses of recovery,* shall first reimburse the employer or its workmen's compensation carrier for any amounts paid or payable under the workmen's compensation act to date of recovery, and the balance shall forthwith be paid to the employee or his dependents or personal representative and

shall be treated as an advance payment by the employer on account of any future payment of compensation benefits.

"*Expenses of recovery* shall be the reasonable expenditures, *including attorney fees,* incurred in effecting such recovery. Attorney fees, unless otherwise agreed upon, shall be divided among the attorneys for the plaintiff as decreed by the court. *The expenses of recovery above mentioned shall be apportioned by the court between the parties as their interests appear at the time of said recovery.*" (Emphasis added.)

It is the last sentence of the statute which requires interpretation here.

The insurance company takes the position that the expenses "above mentioned" includes only the incidental expenses, and ignores the fact that the statute specifically provides that the expenses "above mentioned" are "reasonable expenditures, *including attorney fees.*" The company's brief devotes a substantial portion thereof to a justification of its position that it will not be getting a "free ride," if it is not compelled to bear a share of the attorney fees. This is a matter with which this court is in no way concerned. The Legislature has specifically provided that "the expenses of recovery above mentioned shall be apportioned by the court between the parties as their interests appear at the time of said recovery." This court is satisfied that there is no ambiguity in the statutory provision with which we are here concerned. The language used clearly sets forth that it is the intention of the legislature that each of the interested parties shall bear its proportionate share of the costs of litigation.

At the time of the recovery of $20,000, by entry of the consent judgment, the insurer had paid $4,326.59 in benefits under the Michigan Workmen's Compensation Law, which represents 21.63% of the total amount recovered. The total expenses of recovery, including reasonable attorney fees of $6,666.66, $440.19 paid by plaintiff's counsel as expenses and $452.58 paid by the insurance company on behalf of plaintiff, total $7,559.-43. Of this amount the insurer is liable for its proportionate share, 21.63% or $1,635.10, and is entitled to be reimbursed for any expenses of recovery incurred by it other than attorney fees. Thereafter, the insurer is entitled to reimbursement because of workmen's compensation benefits paid in the amount of $2,691.49. The balance of $10,749.08, representing the amount remaining of the gross recovery, after deduction of expenses of recovery and reimbursement of the insurer should be paid to the plaintiff.

Plaintiff's counsel may submit an appropriate order.