DETROIT EDISON CO. *v.* SECRETARY OF STATE.

1. STATUTES—CONSTRUCTION.

When the language employed in a statute is plain, certain and unambiguous, no necessity for interpretation exists.

2. LICENSES—CHAIN STORES—BRANCH OFFICES OF ELECTRIC COMPANY.

Branch offices of corporation engaged in the generation and distribution of heat, gas and electric power in several counties in which merchandise was sold *held,* branch or chain stores subject to payment of fees for licenses to operate as chain stores, notwithstanding merchandise sold represented but two per cent. of gross revenue and less than one per cent. of total number of transactions, there was claimed to have been no

----

* 1 Comp. Laws 1929, § 4648.—REPORTER.

net profit from sales and they were made merely to promote and encourage use of electricity and are but an incident to production and distribution of same (Act No. 265, Pub. Acts 1933, as amended by Act No. 177, Pub. Acts 1935).

Appeal from Wayne; Taylor (Mark D.), J., presiding. Submitted June 8, 1937. (Docket No. 30, Calendar No. 39,423.) Decided October 4, 1937.

Bill for declaration of rights by Detroit Edison Company, a New York corporation, against Secretary of State for construction of Act No. 265, Pub. Acts 1933, as amended. Cross-bill by defendant against plaintiff for taxes due. Decree for plaintiff. Defendant appeals. Reversed.

*Oxtoby, Robison & Hull,* for plaintiff.

*Raymond W. Starr,* Attorney General, *Edmund E. Shepherd,* Assistant Attorney General, for defendant.

CHANDLER, J. Plaintiff, a New York corporation, duly licensed to transact business in this State, filed a bill for a declaration of rights under authority of Act No. 36, Pub. Acts 1929 (3 Comp. Laws 1929, § 13903 *et seq.*), and to determine if plaintiff is subject to the provisions of the statute providing for the licensing and taxation of chain stores. Act No. 265, Pub. Acts 1933, as amended by Act No. 177, Pub. Acts 1935.

Plaintiff is engaged in the generation and distribution of electric power in several counties of the State, in the distribution of gas in the city of Port Huron and territory adjacent thereto and also the operation of a central heating system in the metropolitan area of the city of Detroit. For the con-

venience of customers and the transaction of business with them, plaintiff maintains, in addition to the main office in Detroit, district offices distributed throughout the territory served and suburban offices which are under the supervision of the various district offices, the total number of offices at the time of filing the bill of complaint being 57.

In addition to employees whose duties pertain strictly to the business of furnishing gas, electricity and heat, certain employees in the several offices handle transactions which include ''installation orders, disconnection orders, trouble calls, iron cord exchanges, appliance repair orders, merchandise sales, lamp renewal orders, complaints and inquiries, duplicate bills, payment of bills and surety deposit transactions,'' etc.

In most of the mentioned offices a display of merchandise is maintained for sale to the public at retail including such items as electric ranges, flat-irons, toasters, curling irons, waffle irons, floor lamps, refrigerators, etc. As of December 13, 1934, the company stocked for delivery 1,239 items of merchandise. In case of a sale of some of the smaller appliances, delivery is made over the counter at the time of sale. In other instances delivery may be made from a warehouse.

During the year 1933, plaintiff's revenue from the sale of electricity, steam, gas and merchandise totaled $40,975,305.75 of which total $535,540.23 was derived from the sale of merchandise or one and three tenths per cent. of the grand total. During 1934 the grand total was $45,415,317.64 of which $935,140.31 represented merchandise or two per cent. of the whole. The record also reveals that during 1934 the Detroit offices handled 3,139,466 transactions of which 24,388 were sales or 78/100 of one per cent. of the total and in 1935, 3,016,441

transactions, 27,647 or 92/100 of one per cent. representing sales. The term "transactions" includes orders, trouble calls, repair orders, complaints, payment of bills, sales, et cetera.

The amount of the tax for the years ending March 31, 1934 and March 31, 1935 was paid by plaintiff under protest. None has since been paid.

The trial court entered a decree determining and declaring that plaintiff's offices, where merchandise is also exhibited and sold at retail, were not chain or branch stores within the meaning of Act No. 265, Pub. Acts 1933, as amended by Act No. 177, Pub. Acts 1935, and decreed plaintiff to be entitled to recover the amount of the tax paid under protest as herein mentioned.

Section two of the statute in question defines the term "branch or chain store" as follows:

"The term 'branch or chain store,' as used in this act shall be construed to mean and include any store or stores, or any mercantile establishment or establishments in excess of one which are owned, operated, maintained or controlled by the same person, firm, corporation, copartnership or association, either domestic or foreign, in which goods, wares or merchandise of any kind are sold at retail: Provided, that 'store' as herein defined shall not be held to include any place or places of business commonly known as gasoline filling stations or gasoline bulk plants which deal primarily in the sale or distribution of petroleum products." Act No. 265, § 2, Pub. Acts 1933.

The amendment of 1935 added nothing pertinent to the present inquiry.

Plaintiff and appellee consistently refers to the places in which it transacts its business and sells the offered merchandise as "branch offices" and insists that the same are not "branch or chain stores" with-

in the meaning of the quoted statutory definition of the term. Stress is placed upon the fact that the revenue from sales of merchandise in relation to the total revenue received is so negligible as to indicate plainly that its retail sales are but an incident to its principal business of supplying heat, gas and electric power. A like conclusion is advanced upon comparison of the total transactions with those transactions representing sales. It is also submitted that plaintiff realizes no net profit from the sales but that the various items are handled merely to promote and encourage the use of electricity and are incidental thereto; that it is immaterial to plaintiff whether a prospective customer purchases a desired article from it or from some other source; that some of the so-called offices stock but a very small selection of the appliances; all of which supports the conclusion that its retail sales are an incident to its principal business and finally that it was not intended that the act in question should embrace an enterprise such as is under consideration where the sales of goods, wares or merchandise are incidental to some major activity.

The statute is worded in the disjunctive and from an examination thereof if the places in which the merchandise is sold can be classified as either a store or stores, or as a mercantile establishment or as an establishment, plaintiff would be within the statute.

The word "store" has been subject to frequent definition. It is defined by Webster (Webster's New International Dictionary [Reference History Ed.]) as, "Any place where goods are kept for sale, whether by wholesale or retail." See, also, *Sparrenberger* v. *State,* 53 Ala. 481 (25 Am. Rep. 643); *Boston Loan Co.* v. *City of Boston,* 137 Mass. 332; *Warburton-Beachem Supply Co.* v. *City of Jackson,*

151 Miss. 503 (118 South. 606). In the last case cited it was held that one engaged in the plumbing business who, as an incident thereto, maintained a stock of plumbing supplies from which he sold to the general public, was liable to pay a privilege tax levied upon one engaged in the plumbing business as well as a similar tax for operating a store.

A reading of section two of the statute is conclusive that the same is not indefinite nor ambiguous. When the language employed is plain, certain and unambiguous, no necessity for interpretation exists. The legislature has supplied a definition of the term "branch or chain store." The definition has been rendered in common understandable language with nothing present to indicate that the words used were intended to convey a meaning other than is commonly understood, and in such instances courts will not attach a different or contrary meaning but will adopt the generally accepted construction.

In view of what has been said, we must conclude that plaintiff is engaging in operating chain stores within the meaning of the statute. The legislature has failed to indicate that an exception should be made upon the basis of arguments advanced by plaintiff that its retail sales are an incident to its primary objective; that its salesmen devote the major portion of their time to transactions relative to the distribution of electricity, heat, and gas; that a net profit is not realized and that the sales are a part of a promotional scheme; or that if it is compelled to pay the tax it will necessitate the abandonment of its policy of selling merchandise in some of its so-called branch offices for economic reasons.

The decree is reversed and the bill dismissed, with costs to defendant.

Fead, C. J., and North, Wiest, Butzel, Bushnell, Sharpe, and Potter, JJ., concurred.