THE CLARKE-GRAVELY CORPORATION v DEPARTMENT OF
TREASURY

Docket No. 77-4477. Submitted October 5, 1978, at Lansing.—Decided
May 1, 1979.

Plaintiffs, the Clarke-Gravely Corporation and others, were all
subsidiary corporations of Studebaker-Worthington Corporation
and originally filed individual income tax returns for the years
1971, 1972 and 1973. In 1975, more than three years after the
1971 returns were filed, plaintiffs filed claims for refunds for
those years by filing amended combined returns. Defendant
Department of Treasury processed the refund claims for 1972
and 1973 and paid the claims without interest but denied a
refund for 1971 because the claim was not timely filed. Plain-
tiffs sued the Department of Treasury and the State Treasurer
in the Ingham Circuit Court claiming that the statute of
limitations was tolled by the fact that plaintiffs' 1971 combined
Federal return was in litigation and claiming interest on the
refunds from the date of overpayment. The judge, Thomas L.
Brown, granted summary judgment denying the 1971 refund
claim and granting interest on the 1972 and 1973 refunds from
the date of filing the combined returns. Plaintiffs appeal. *Held:*

1. The statute suspending the running of the statute of
limitations under the state income tax law pending final deter-
mination of litigation of or hearing on a taxpayer's Federal or
state income tax return applies to both the collection of defi-
ciencies and the claiming of refunds but does not encompass
the tolling of the time for filing for a refund using combined
returns.

2. A refund of state corporation income tax occasioned by the

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes § 254.
[2] 73 Am Jur 2d, Statutes §§ 265, 306.
[3] 71 Am Jur 2d, State and Local Taxation § 608.
  72 Am Jur 2d, State and Local Taxation §§ 877, 1069, 1074, 1141.
  51 Am Jur 2d, Limitation of Actions § 34.
  When right to refund of state or local taxes accrues, within statute
    limiting time for applying for refund. 46 ALR2d 1350.
  71 Am Jur 2d, State and Local Taxation § 611.
  72 Am Jur 2d, State and Local Taxation §§ 1068, 1069.

filing of an amended combined return bears interest from the date of filing of the amended return.

Affirmed.

1. STATUTES — CONSTRUCTION — CONSTRUCTION OF ENTIRE ACT.

An act must be read· in its entirety and the meaning given to one section arrived at after due consideration of other sections so as to produce, if possible, a harmonious and consistent enactment as a whole.

2. STATUTES — LITERAL CONSTRUCTION — UNJUST RESULT.

A fundamental rule of statutory construction is that departure from the literal construction is justified where such a construction would produce an absurd and unjust reality and would be clearly inconsistent with the purposes and policies of the act in question.

3. TAXATION — INCOME TAX — STATUTE OF LIMITATIONS.

The statute suspending the running of the statute of limitations under the state income tax law pending final determination of litigation of or hearing on a taxpayer's Federal or state income tax return applies to both the collection of deficiencies and the claiming of refunds but does not encompass the tolling of the time for filing for a refund using a combined return in amendment of a previously filed individual return.

4. TAXATION — INCOME TAX — REFUNDS — INTEREST ON REFUNDS.

Refunds of state corporate income tax occasioned by the filing of amended combined return bear interest from the date of filing of the amended return.

*Miller, Canfield, Paddock & Stone* (by *Samuel J. McKim, III,* and *Kenneth E. Konop*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *E. Boomie Mikrut,* Assistants Attorney General, for defendants.

Before: V. J. BRENNAN, P.J., and ALLEN and P. R. O'CONNELL,* JJ.

ALLEN, J. Does § 411(2) of the Michigan Income Tax Act, MCL 206.411(2); MSA 7.557(1411)(2),

---

*Circuit judge, sitting on the Court of Appeals by assignment.

which provides for the tolling of the three-year period of limitations for refunds as set forth in § 441(2) of said act, MCL 206.441(2); MSA 7.557(1441)(2), apply when the corporate claimant of the refund, who originally filed an individual income tax return, more than three years later filed a combined return as provided in § 335, MCL 206.335; MSA 7.557(1335), of said act? Where a combined return is filed within the three-year period of limitations set forth in § 441(2) thus entitling the taxpayer to a refund and interest, is the interest on the refund computed from the date that the individual return was filed or from the date that the combined return was filed? On September 12, 1977, the trial court answered the first question in the negative and, in response to the second question, held that interest is computed from the date of filing the amended return. Plaintiffs appeal of right. These two questions of first impression arise on the following facts.

Plaintiffs are subsidiary corporations of the parent Studebaker-Worthington Corporation.[1] In 1971, 1972, and 1973, each plaintiff filed a separate Michigan corporation tax return. Commencing in 1968, the first year that the Michigan Income Tax Act of 1967 took effect, plaintiffs filed their own separate corporate tax returns. In 1975, plaintiffs learned that they would receive a substantial refund if amended combined tax returns were filed under § 335 of the act for the years 1971, 1972 and 1973. Under the recomputed returns, plaintiffs claimed refunds as follows: $149,293 for 1973; $101,976 for 1972; and $74,494 for 1971. The Michigan Department of Treasury allowed the refunds for 1972 and 1973, but without interest. The re-

---

[1] The parent corporation consists of some forty subsidiaries throughout the United States, Canada and Europe.

fund for 1971 was denied on grounds that it was not timely filed, having been filed on September 12, 1975, a date more than three years after April 17, 1972, which was the date on which the separate 1971 return was filed. The 1971 Federal return had been audited by the Federal government and was in the process of litigation when plaintiffs filed the combined return in 1975.

Plaintiffs filed suit in the Circuit Court for Ingham County claiming a refund for the year 1971, and interest thereon from April 17, 1972. Further, plaintiffs claimed they were entitled to interest on the refunds given them for the years 1972 and 1973. The circuit court granted defendants' motion for summary judgment for the reason that the combined return for 1971 was not filed three years from the date of filing the original separate return. Interest on the 1972 and 1973 returns was allowed, but only from September 12, 1975—the date on which the combined returns were filed. Plaintiffs disagree with the trial court's denial of the 1971 refund and further seek interest on the 1972 and 1973 payments from April 17, 1972.

When read apart from other sections of the statute, § 441 spells out an absolute three-year period within which a taxpayer may claim a refund.

"(2) *A taxpayer who has paid a tax which he claims was not due under this act may, on or before the expiration date of 3 years from the date set for the filing of the annual or final return for the year or the date the tax was paid, whichever is later, and not after, petition the department in writing to refund the amount so paid.* If the annual return reflects an overpayment or credits in excess of the tax, the declaration thereof on the return constitutes a claim for refund." (Emphasis supplied.)    MCL    206.441(2);    MSA 7.557(1441)(2).

But plaintiffs contend that § 441(2) cannot be read in isolation and should be interpreted in conjunction with § 411 which pertains to periods of limitations.

"(1) No deficiency, interest or penalty shall be assessed for any year after the expiration of 3 years from the date set for the filing of the annual return for each year or the date the return was filed whichever is later. If any person subject to tax under this act fraudulently conceals any liability for the tax or any part thereof, the department within 2 years of the discovery of the fraud shall assess the tax with interest and penalties as provided in this act, computed from the date on which the tax liability originally accrued, and the tax, penalties and interest shall become due and payable after notice and hearing as provided in this act, anything herein contained to the contrary notwithstanding.

"(2) The running of the statute of limitations shall be suspended for the period *pending final determination of litigation of or hearing on a taxpayer's federal income tax return or of the return required by this act,* or in the event any notice is required under the provisions of [MCLA 206.325; MSA 7.557(1325)], and for 1 year thereafter.

"(3) The running of the statute of limitations shall be suspended for the period for which the taxpayer and the commissioner have consented in writing that the period be suspended. The period so extended may be further extended by subsequent consent in writing made before the expiration of the extended period.

"(4) The running of the statute of limitations shall be suspended for any taxable year for which no return has been filed." (Emphasis supplied.) MCL 206.411; MSA 7.557(1411).

The 1971 single consolidated Federal income tax return filed by the parent company included tax returns for three of the plaintiffs in this action. That return had been questioned by the Federal government and was still in the process of litiga-

tion when plaintiffs filed their combined Michigan return for 1971.

## I

Plaintiffs argue that under § 411(2) the pending litigation on the 1971 Federal income tax return tolls the three-year limitation imposed by § 441(a). Despite the over-all excellence of plaintiffs' brief and oral argument we respectfully disagree. Subsection (2) of § 411, *supra,* is obviously ambiguous. One cannot determine what period of limitations the words "the running of the statute of limitations" refer to. Does it refer to the three-year period of limitations *for refunds* set forth in § 441(2) or does it refer to the three-year period of limitations for assessment of deficiencies set forth in § 441(1), or both? The trial court held that because subsection (2) of § 411 immediately followed subsection (1) of § 411 and because subsection (1) pertained only to deficiencies, subsection (2) tolled only the period during which the state could assess a deficiency. Subsection (2) is ambiguous in a second respect. Assuming, *arguendo,* that it does refer to refunds, it is not clear from the wording whether the refunds eventually due must arise out of litigation or hearing on the taxpayer's Federal return or whether, as in the instant case, the refunds arise from facts completely unrelated to the Federal audit. Or to state the question in another way—did the Legislature intend subsection (2) to apply to a § 335 situation where, quite apart from any Federal income tax dispute, a taxpayer elects to file a combined return?

Where one section of a statute is ambiguous or is susceptible to more than one interpretation, the entire statute must be read as a whole, and the meaning given to one section should be deter-

mined by considering the other sections. *King v Director of the Midland County Dep't of Social Services,* 73 Mich App 253; 251 NW2d 270 (1977), *Williams v Secretary of State,* 338 Mich 202; 60 NW2d 910 (1953). Another rule of statutory construction—and one which we will again refer to later in this opinion—is the rule that departure from a literal construction is justified when such a construction would produce an awkward result or a result inconsistent with the policies of the act in question. *Salas v Clements,* 399 Mich 103; 247 NW2d 889 (1976). Relevant to our construction of the statute as a whole are § 325(2) and § 335.[2] Section 325(2) reads:

"Every taxpayer shall notify the department in writing of any alteration in, or modification of, his federal income tax return which affects his taxable income under this act and of any similarly related recomputation of tax or determination of deficiency under the provisions of the internal revenue code. The notice shall be given in writing within 60 days after the final alteration, modification, recomputation or determination of deficiency. If the commissioner finds upon all the facts that an additional tax under this act is owing, the taxpayer shall thereupon pay the additional tax. If the commissioner finds that the taxpayer has overpaid the tax imposed by this act, a credit or refund of the overpayment shall thereupon be made as provided in section 441." MCL 206.325(2); MSA 7.557(1325)(2).

Upon reading and considering the separate sec-

---

[2] "In the discretion of the commissioner, *any taxpayer which owns or controls either directly or indirectly substantially all the capital stock of 1 or more other corporations,* or substantially all the capital stock of which is owned or controlled either directly or indirectly by 1 or more other corporations, or by interests which own or control either directly or indirectly substantially all of the capital stock of 1 or more corporations may be required *or permitted to make a report on a combined basis covering any such other corporations* and setting forth such information as the commissioner may require." (Emphasis supplied.) MCL 206.335; MSA 7.557(1335).

tions above cited *in pari materia* and upon evalu-
ating the statute as a whole, this Court concludes
that § 411(2) refers to both claims for deficiencies
by the state and claims for refunds by the tax-
payer. In this respect our conclusion resolves the
first mentioned statutory ambiguity in favor of
plaintiffs—a conclusion we note, which was con-
ceded by defendants upon oral argument.[3] How-
ever, we also conclude that § 411(2) does not en-
compass the tolling of the time for filing for a
refund using a combined return under § 335. In
this respect our conclusion resolves the second
mentioned statutory ambiguity in favor of the
state.

It appears clear to us that in § 411(2) and § 325,
the Legislature intended to keep open the three-
year limitation period where the taxpayer's Fed-
eral return was being questioned. Because the
state tax "piggy-backs" on the Federal return,
*Michigan Consolidated Gas Co v Dep't of Treasury,*
72 Mich App 426, 435; 250 NW2d 85 (1976), the
Legislature was certain that any eventual change
in the Federal return would in turn affect the
state tax, resulting in either deficiencies or re-
funds. In such situations it is always the same
taxpayer who is involved, *viz.:* the taxpayer who
has filed the state return. But under § 335, a
different taxpayer is involved. A combined return
under § 335 is necessarily filed by a different tax-
payer than the taxpayer filing the original state
return. In the case before us the five named plain-
tiffs filed the state tax returns but it was Stude-
baker-Worthington which filed the combined re-

---

[3] In response to questions from the Court at oral argument, counsel
for defendants admitted that the Department of Treasury had inter-
preted § 411(2) to include refunds as well as deficiencies. However,
defense counsel claimed that said section did not extend to § 335
situations.

turn. For this reason we do not believe the Legislature intended the tolling to apply to § 335 situations.

Our conclusion that the Legislature did not intend to extend the three-year period within which to file a combined return is reinforced by practical considerations. It is a well known fact, of which we take judicial notice, that corporate income fluctuates greatly. Depending upon economic conditions the differences between the tax due under individual returns and a combined return is extraordinary. It is in the state's interest that this disparity and the state's consequent obligation to make a refund be known within a reasonably short period of time. Three years appears to be a reasonable period within which the taxpayer is given the option. But under plaintiffs' construction of the statute, the grace period may be prolonged while the Federal government first audits and then engages in litigation on 40 or more subsidiaries. Such an interpretation is not reasonable. As stated in *Webster v Rotary Electric Steel Co,* 321 Mich 526, 531; 33 NW2d 69 (1948), where the meaning of a statute is doubtful:

"* * * a reasonable construction must be given, looking to the purpose subserved thereby. *Attorney General v Bank of Michigan,* Harr Ch (Mich) 315; *Bennett v Michigan Pulpwood Co,* 181 Mich 33 [147 NW 490 (1915)]. Its occasion and necessity are matters of judicial concern. *Sibley v Smith,* 2 Mich 48[6 (1853)], and *Bennett v Michigan Pulpwood Co, supra,* and its purpose should be effected if possible, *People v Stickle,* 156 Mich 557 [121 NW 497 (1909)]. Its spirit and purpose should prevail over its strict letter, *Stambaugh Township v Iron County Treasurer,* 153 Mich 104 [116 NW 569 (1908)]."

Neither is plaintiffs' construction of the statute practical.

"Nor will it be forgotten, in any question of statutory tax interpretation, that taxing is a practical matter and that the taxing statutes must *receive a practical construction.*" *In re Brackett Estate,* 342 Mich 195, 205; 69 NW2d 164 (1955). (Emphasis supplied.)

Plaintiffs herein may argue that once this Court concludes, as we have in fact concluded, that § 411(2) relates to claims for refunds, the language of § 411(2) becomes so unambiguous and clear as to leave no room for a practical construction. See *Detroit Edison Co v Secretary of State,* 281 Mich 428, 433; 275 NW 196 (1937). We disagree, first, because we do not find the section to be clear and unambiguous and, second, because the plain words of § 441(2) state that the taxpayer's right to claim a refund is three years "and not after". In view of the express "and not after" limitation and the fact that refunds are considered a privilege rather than a right, *Manistee & NE R Co v Comm'r of Railroads,* 118 Mich 349, 350; 76 NW 633 (1898), we conclude that in the case before us the taxpayers' right to a refund depended upon filing the consolidated return within three years and that the taxpayers' failure to exercise that privilege forfeited the right to the refund.

In their brief and oral argument, excellently done in all respects, plaintiffs cite cases from other jurisdictions[4] in rebuttal to defendants' claims that § 411(2) tolling applies only to refunds directly related to downward changes in the Michigan tax liability required by reason of the Federal litiga-

---

[4] The cases cited by plaintiffs for this proposition are *International Health & Life Ins Co v Dep't of Revenue,* 269 Or 23; 523 P2d 223 (1974), *Industrial Air Products Co v Dep't of Revenue,* 259 Or 38; 485 P2d 24 (1971), *Montgomery Ward & Co, Inc v Franchise Tax Board,* 6 Cal App 3d 149; 85 Cal Rptr 890 (1970). Plaintiffs also cite statutory provisions which, unlike Michigan's, expressly restrict refunds (or deficiencies) during the period "reopened" to refunds for the precise change in the state tax caused by the Federal change. See § 77-2793 Neb Rev Stat 1943; ch 36, § 5278, Maine Rev Stat 1954; § 1083 NY Tax Law; Ill Rev Stat 1975, ch 120, par 9-905(e).

tion. Plaintiffs conclude that these cases refute any conclusion that "if facts which are not relevant to Federal taxable income were called to the Commissioner's attention with respect to the year 're-opened' by Section 325(2), or during the pendency of Federal hearings or litigation, the Commissioner would have to ignore them, and base his determination solely upon the actual changes in Federal taxable income".

The flaw in plaintiffs' reliance on said cases is that they speak to a different issue than the question before us. The Oregon and California cases so cited hold that once the taxpayer's Federal return is in litigation and a change therein reported or otherwise brought to the attention of the state, the amount of the refund or deficiency may (in the absence of statutory provisions which, like Nebraska, Maine, *et al,* restrict the amount of the refund or deficiency to the precise change in the state tax caused by the Federal change) exceed the amount of the refund or deficiency occasioned by the change in the Federal return alone. In all of those cases the ensuing refund or deficiency stemmed from the change in the Federal return. But in the case before us the issue is not the amount of the higher refund but whether the tolling provision of § 411(2) extends the time period within which the taxpayer may file a § 335 combined return. In the case before us, unlike the Oregon and California cases, the ensuing refund in no way stemmed from the change in the Federal return.

The inapplicability of the Oregon-California cases relied upon by plaintiffs is best illustrated by *International Health & Life Ins Co, supra.* There, plaintiff, an Oregon corporation, was a subsidiary of Industrial Housing Association, a California

corporation doing business in Oregon. Both corporations filed separate corporate excise tax returns in Oregon for 1964. In 1965, a corporate reorganization took place. In 1971, the reorganization was recognized by the IRS and International was allowed to carry back a 1967 operating loss against its 1964 income. As a result, International's tax for 1964 was virtually eliminated and International would be entitled to a refund, provided (1) International's claim for a refund was not barred by Oregon's three-year statute of limitations, ORS 314.415, and (2) the refund was not restricted to those items which were not adjusted by the IRS. As to the first issue the court held that the claim was not barred by the statute because another section of the code *expressly* extended the time period.[5] On the second issue the court held that the refund on an excise tax was not restricted to the items adjusted by IRS.

Unlike Oregon which makes a specific exception where there is a change in Federal taxable income, Michigan has no statutory exception extending the time for filing a § 335 combined return. Furthermore, the reduction in International's 1964 state tax resulted from (though it exceeded in amount) the change made by IRS, whereas in the case before us the requested refund has nothing to do with changes made or to be made by the pending litigation in Studebaker-Worthington's 1971 Federal return. Accordingly, we hold that

---

[5] "However, we agree with the Tax Court that another statute, ORS 314.380(2), is applicable to the instant case. That statute states, in pertinent part:

"* * * The taxpayer may file a report of a federal change or correction, and the report of the federal change or correction shall be treated by the department as a claim for refund pursuant to ORS 314.415 and, notwithstanding the [time] limitations of ORS 314.415, shall be deemed timely if filed with the department within one year after the federal correction has become final.'" *International Health & Life Ins Co v Dep't of Revenue*, 269 Or 23, 26; 523 P2d 223.

defendants properly rejected plaintiffs' combined tax return for 1971. While the trial judge assigned the wrong reasons for his decision on this issue, he nevertheless reached the correct result.

## II

The second question raised on appeal to us is whether interest on the refunds due plaintiffs for the tax years 1972 and 1973, is computed from the date the original returns were filed or is computed from the date that the combined returns were filed on September 12, 1975. Prior to January 1, 1974, the Michigan income tax act did not expressly provide for the payment of interest on refunds. In 1974, § 441 was amended by adding to subsection (3) the following language, effective for tax years on or after January 1, 1974:

"* * * [I]nterest at the rate of 9% per annum shall be added to the refund, computed in the same manner and subject to the same provisions as provided in section 6611 of the internal revenue code." MCL 206.441(3); MSA 7.557(1441)(3).

Plaintiffs claim that although the added language does not govern a 1971 tax return, it formalizes what was implicit in the statute prior to 1974. In expanding on this statement, plaintiffs state that the Michigan statute "piggy-backs" and is modeled after the Federal act; that under Treasury Regulation 301.6611-1(a) of the Federal act, interest is paid "from the date of overpayment"; that the date of overpayment is defined as the *date on which the taxpayer overpays his correct tax liability.*[6]

Plaintiffs' claim is technically attractive but we remain unconvinced. We hesitate to read into the

---

[6] Treasury Regulation 301.6611-1(a), provides a clear statement of how the Federal income tax rule works. It provides in relevant part as follows:

statute provisions which the Legislature did not add until a later date. In the case before us the alleged "overpayment" occurred only because the taxpayers elected to use a nonfederal-type provision. Filing a combined report is a special legislative privilege pursuant to § 335. Plaintiffs' filing of a combined Michigan return was not necessarily related to any of its Federal rights. We decline to give similar terms in the Federal and state statutes similar meanings when those terms are applied to dissimilar situations. Realistically, plaintiffs' original 1972 and 1973 tax returns were not "overpayments". As first filed, plaintiffs paid the precise amount of tax required under the returns. It was only after plaintiffs decided to file amended combined returns that an "overpayment" for 1972 and 1973 occurred. They have been paid interest from that date. This is not a case where the taxpayers have been paid no interest at all.[7] Nor is this a case where the refund was due to an improper assessment or other action of the state. Until September 12, 1975, plaintiffs had nothing coming and nothing was due by the state. From that date forward plaintiffs have been paid.

Affirmed. No costs, a public question being involved.

---

"* * * there can be no overpayment of tax until the entire tax liability has been satisfied. Therefore, the dates of overpayment of any tax are the date of payment of the first amount which (when added to previous payments) is in excess of the tax liability * * * and the dates of payment of all amounts subsequently paid with respect to such tax liability."

Section 6611 of the Internal Revenue Code of 1954, as amended, then goes on to provide that interest is to be paid *from the date of the "overpayment"*.

[7] In view of the fact that the Legislature did not provide for paying interest on tax refunds until January 1, 1974, the question arises why any refunds were paid in this case at all. However, that question was not raised by defendants in this appeal. Further, there is case law authority that even in the absence of statutory authority, interest must be paid on tax refunds. *Standard Oil Co v Michigan,* 283 Mich 85, 96; 276 NW 908 (1937), *Ready Power Co v Dearborn,* 336 Mich 519, 526; 58 NW2d 904 (1953).